UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WALTER COOPER PEDRO,

        Petitioner,

    v.

WARDEN, GLADES COUNTY
DETENTION CENTER, U.S.
ATTORNEY GENERAL,

        Respondents.

Case No. 2:26-cv-524-KCD-DNF

/

## ORDER

Petitioner Walter Cooper Pedro has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 1.)[1] He claims that the Attorney General is holding him without a bond hearing in violation of the Immigration and Nationality Act ("INA"), and his continued imprisonment violates the Fifth Amendment as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*Id.* at 9-10.) Respondents oppose the petition. (Doc. 3.)

### I. Background

Pedro is a Cuban citizen who arrived at the U.S. border in January 2024. (Doc. 1 at 5; Doc. 3-1 at 5.) After presenting himself to authorities, he

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

was released into the country on humanitarian parole. (Doc. 3-1 at 15.) But that temporary reprieve ended in September 2025. Following his arrest for an alleged battery, Pedro was transferred into ICE custody. That same day, immigration officials served him with a Notice to Appear. (Doc. 3-1 at 12, 15.) By operation of law, that charging document instantly terminated his parole. *See* 8 CFR § 212.5(e)(2)(i) ("When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified."). Pedro has remained in federal detention ever since, waiting on a final order of removal.

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

### III. Discussion

Pedro's habeas petition presses two substantive claims. First, his continued detention without a bond hearing violates the Fifth Amendment. (Doc. 1 at 9.) Second, his detention violates the INA because he is eligible for a bond hearing that the Government is withholding. (*Id.* at 10.) To make sense of it all, it helps to tackle these issues out of order, beginning with the INA.

**A. INA**

Sections 1225 and 1226 of the INA govern the detention of noncitizens before a final order of removal. The former provision covers "inadmissible arriving aliens" who are "present in the United States [but have] not been admitted." 8 U.S.C. § 1225(a)(1). So-called "'applicants for admission' in the language of the statute." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Pertinent here, § 1225 "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Id.* The only exception is release "on parole for urgent humanitarian reasons or significant public benefit." *Id.* at 288. So aliens falling under § 1225 are categorically not entitled to a bond hearing.

On the other hand, § 1226 has historically "authorize[d] the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings[.]" *Jennings*, 583 U.S. at 289 (emphasis

3

added). Section 1226(a) sets out a discretionary detention framework for aliens arrested and detained "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). While the arresting immigration officer makes an initial custody determination, noncitizens detained under § 1226(a) may appeal that decision in a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306.

According to Pedro, he is entitled to a bond hearing and § 1226 is the vehicle through which he would obtain such relief. (Doc. 1 at 10.) But this argument runs headlong into the facts. Pedro was apprehended at the border. That puts him squarely under § 1225. *See, e.g., Lopez v. Hardin*, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *4 (M.D. Fla. Oct. 29, 2025) ("[Section] 1225 applies to noncitizens arriving at a border or port and are presently seeking admission into the United States."). The fact that Pedro spent time in the United States after being released on parole—and was eventually apprehended in the country—does not change his classification. *See Jennings*, 583 U.S. at 288 ("[W]hen the purpose of the parole has been served, 'the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'"

4

(quoting 8 U.S.C. § 1182(d)(5)(A))). "[A]lthough aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." *Moore v. Nielsen*, No. 4:18-cv-01722-LSC-HNJ, 2019 WL 2152582, at *3 (N.D. Ala. May 3, 2019); *see also Singh v. Noem*, No. CIV 25-1110 JB/KK, 2026 WL 146005, at *36 (D.N.M. Jan. 20, 2026).

Section 1225 says nothing "whatsoever about bond hearings." *Jennings*, 583 U.S. at 297. So Pedro's continued detention without a bond hearing cannot be in violation of the INA.

### B. Due Process

Even if Pedro's detention without a bond hearing is authorized by the INA, he argues it violates the Due Process Clause. (Doc. 1 at 9.) The Court cannot agree.

The Fifth Amendment requires the government to provide due process before depriving a person of life, liberty, or property. *Dep't of State v. Munoz*, 602 U.S. 899, 909-10 (2024). It is "wellestablished that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 305 (1993); *Zadvydas*, 533 U.S. at 693-94 ("[T]his Court has held that the Due Process Clause protects an alien subject to a final order of deportation.").

At the same time, the Supreme Court has repeatedly acknowledged that "the nature of protection [under the Due Process clause] may vary depending upon [immigration] status and circumstance." *Zadvydas*, 533 U.S. at 694; *see also Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application . . . . [H]owever, once an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly.").

For noncitizens who arrive at the border without lawful status—even if they manage to physically enter the country—the Due Process Clause is constrained. The Supreme Court's decision in *Dep't of Homeland Sec. v. Thuraissigiam* shows exactly how this works. 591 U.S. 103 (2020). The petitioner in that case tried to cross the border illegally and was apprehended a mere 25 yards into the United States. The government placed him in expedited removal proceedings under § 1225(b)(1) and kept him in continuous custody. *Id.* at 114. When his asylum claim failed, he turned to federal court. He filed a habeas petition asking for a do-over—a court order directing the government to give him another opportunity to apply for asylum relief. *Id.* at 115.

The Supreme Court said no, holding (among other things) that the Due Process Clause did not guarantee the petitioner judicial review of his asylum

denial. *Id.* at 139. The Court explained that granting procedural due process rights to arriving aliens beyond what Congress had prescribed "is contrary to more than a century of precedent." *Id.* at 138. That precedent establishes a stark but unyielding rule: for foreigners who have never been admitted into the country, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, *are* due process of law." *Id.* (emphasis added). This approach stems from a simple constitutional reality—the political branches hold plenary authority over our borders. And if you have the sovereign power to keep someone out, you necessarily possess the power to set the procedural ground rules for making that determination. *Id.* at 139.

The takeaway from *Thuraissigiam* is plain: an arriving alien "has only those rights regarding admission that Congress has provided by statute." *Id.* at 140; *see also Mendoza-Linares v. Garland,* 51 F.4th 1146, 1167 (9th Cir. 2022) (explaining that any rights "an alien seeking initial admission to the United States" may have "in regard to removal or admission are purely statutory in nature and are not derived from, or protected by, the Constitution's Due Process Clause").

Aliens "who arrive at ports of entry" and are released into the United States pending removal, as occurred here, "are treated for due process purposes as if stopped at the border." *Thuraissigiam,* 591 U.S. at 139; *see also*

*Heng Meng Lin v. Ashcroft*, 247 F. Supp. 2d 679, 683 (E.D. Pa. 2003) ("An excludable alien may be physically allowed into the country while his admission is being considered, but under the entry fiction is still considered to be at the border awaiting entry."). That means Pedro is legally no different from an applicant standing at the border, leaving him to claim "only those rights regarding admission that Congress has provided by statute." *Jandres-Ordonez v. Bondi*, No. 6:25-CV-084-H, 2026 WL 274493, at *12 (N.D. Tex. Jan. 23, 2026); *see also Liang v. Almodovar*, No. 1:25-CV-09322-MKV, 2025 WL 3641512, at *5 (S.D.N.Y. Dec. 15, 2025); *Ayala v. Harper*, No. 1:26-CV-204-CLM-GMB, 2026 WL 501113, at *10 (N.D. Ala. Feb. 23, 2026).

Section 1225 provides the procedural boundaries Congress set for arriving aliens. "[A]liens falling within the scope of § 1225(b)(2) shall be detained for a [removal] proceeding." *Jennings*, 583 U.S. at 297. The statute "mandate[s] detention of applicants for admission until certain proceedings have concluded" and says nothing "whatsoever about bond hearings." *Id.* Since Congress drew the blueprint for arriving aliens, choosing mandatory detention, Pedro cannot invoke the Fifth Amendment to demand a bond hearing. For an applicant legally standing at the nation's door, the statutory text provides the beginning and the end of the constitutional inquiry. That means Pedro's due process challenge necessarily fails. *See Arana v. Arteta*, No. 1:26-CV-240-GHW, 2026 WL 279786, at *5-6 (S.D.N.Y. Feb. 3, 2026).

8

Pedro invokes *Zadvydas v. Davis*, 533 U.S. 678 (2001) to argue that his continued custody without a bond hearing has become unlawfully indefinite. (Doc. 1 at 12.) In *Zadvydas*, the Supreme Court held that the government cannot hold an alien indefinitely under 8 U.S.C. § 1231(a)(6)—the statute governing detention *after* a final order of removal has been entered. To avoid serious constitutional concerns, the Court read an implicit time limit into that statute, requiring release if removal is no longer reasonably foreseeable. *Zadvydas*, 533 U.S. at 689.

But *Zadvydas* provides Pedro no help here for a simple and fundamental reason: he is detained under a completely different statutory scheme. Pedro does not yet have a final order of removal. Instead, because his parole was terminated, he is treated as an applicant for admission detained pending the outcome of his removal proceedings under 8 U.S.C. § 1225(b). *See Diaz Patino v. Villegas*, No. 1:25-CV-276-H, 2026 WL 673166, at *4 (N.D. Tex. Mar. 9, 2026). And the Supreme Court has rejected the attempt to transplant *Zadvydas*'s implicit time limits onto § 1225(b). *Jennings*, 583 U.S. at 296-99; *see also Erbite v. Ripa*, No. 2:26-CV-558-JES-NPM, 2026 WL 776143, at *2 (M.D. Fla. Mar. 19, 2026).

The Court in *Jennings* explained that the two statutes are drafted entirely differently. The post-removal statute at issue in *Zadvydas* states that the government "may" detain certain aliens, a permissive word that left

9

the Court room to impose a reasonable temporal limit. *Jennings*, 583 U.S. at 299-300. But § 1225(b) is unequivocal. It mandates that applicants for admission "shall be detained" until their removal proceedings conclude. *Id.* at 297. As the Supreme Court put it, the text of § 1225(b) says nothing "whatsoever about bond hearings" and leaves no interpretive room for a *Zadvydas*-style saving construction. *Id.*; *see also Gueye v. Sessions*, No. 17-62232-CIV, 2018 WL 11447946, at *2 (S.D. Fla. Jan. 24, 2018) ("*Zadvydas* did not analyze detention in the context of expedited removal proceedings.").

To be sure, *Jennings* did not resolve every question in this arena. When the Supreme Court declined to rewrite § 1225 to include an implicit bond hearing, it explicitly left for another day the constitutional fallback: whether prolonged mandatory detention under that statute might independently violate the Due Process Clause. *Id.* at 312. And immediately following *Jennings*, some courts did find that aliens proceeding under § 1225(b) have at least some base level of due process rights against unreasonable detention. *See, e.g.*, *Padilla v. Immigr. & Customs Enf't*, 953 F.3d 1134, 1147 (9th Cir. 2020) (upholding a preliminary injunction to a class of §1225(b) detainees because "plaintiffs were likely to succeed on their claim that they are constitutionally entitled to individualized bond hearings before a neutral decisionmaker").

10

But the Supreme Court has since firmly closed that door in *Thuraissigiam*. That case shows how the Due Process Clause operates—or, more accurately, how it is constrained—when it comes to individuals, like Pedro, who have not been lawfully admitted.

The interplay between the two decisions is straightforward. *Jennings* hypothesized that, at some point, prolonged detention might offend due process. But *Thuraissigiam* clarified exactly what process is "due" to an arriving alien. As mentioned, the Court reaffirmed its "century-old rule" that "Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Thuraissigiam*, 591 U.S. at 107, 139.

That rule resolves the constitutional question here. Because Pedro's temporary parole was terminated, the law treats him as though he is still standing at the border, knocking on the door. *Id.* at 139 ("[A]liens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border."). For individuals in this posture, the Due Process Clause is not a roving mandate for federal judges to construct a balancing test. Instead, an arriving alien's constitutional rights are coextensive with his statutory rights. And because Congress unequivocally mandated detention for arriving aliens

11

in § 1225 without providing for a bond hearing, the Due Process Clause does not step in to supply one. In this specific context, the statutory floor is also the constitutional ceiling. *See, e.g.*, *A.E. v. Powell*, No. 7:26-CV-337-EGL-NAD, 2026 WL 782294, at *7 (N.D. Ala. Mar. 19, 2026); *de la Rosa Espinoza v. Guadian*, No. 20-3126-JWL, 2020 WL 3452967, at *6 (D. Kan. June 24, 2020).

One can certainly understand Pedro's frustration with his current position, waiting in a detention cell for months while his immigration case inches forward. Yet this Court cannot use judicial fiat to conjure a due process claim just to ease the wait. We are not staring down the barrel of indefinite detention—the constitutional danger the Supreme Court found so problematic in *Zadvydas*. Pedro's current custody has a clear statutory endpoint: it lasts only "until removal proceedings have concluded." *Jennings*, 583 U.S. at 299. And if he eventually receives a final order of removal only to have his deportation stall, the doors of the courthouse will open for him to seek relief under *Zadvydas*. Because the existing framework comes with a built-in expiration date, there is no reason to engineer a constitutional workaround.

## IV. Conclusion

Pedro is legally situated at the border and subject to mandatory detention under 8 U.S.C. § 1225. Because that statute provides no right to a

12

bond hearing, and the Due Process Clause does not step in to supply one for an arriving alien, his continued custody is lawful. Accordingly, Pedro's Petition for a Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk is directed to terminate any pending motions and close the case.

ORDERED in Fort Myers, Florida on April 1, 2026.

Kyle C. Dudek
United States District Judge

13